We'll hear NAACP versus Merrill. Wait one second, let the courtroom clear out. Okay. Go ahead. Good morning, your honors. May it please the court. I'm Assistant Attorney General Michael Skold and I represent the defendants in this appeal. Your honors, plaintiffs ask the federal courts to interfere with redistricting decisions that are exclusively for the legislature to make, to second guess and overrule a population counting method that virtually every state currently uses and that the Supreme Court repeatedly has approved. And to do all this based exclusively on the court's own subjective political judgment about whether and where particular population groups, subgroups, and frankly, individual persons are likely to receive what plaintiffs characterize as fair and effective political representation. The federal courts lack jurisdiction over this claim. Mr. Skold, the standard, as you know, is very low here. It's just whether there's a substantial claim in order to satisfy the ex parte exception. What Supreme Court case precludes court review under one person, one vote of where a person is counted? Which Supreme Court case says that those are unreviewable? I just, with the premise of your question, your honor, the non-justiciability question is not subject to that lower standard. It's only the 11th Amendment issue and we raised a justiciability question under Rucha. But with regard to your 11th Amendment question, your honor. I think it relates to both. Which case, which case precludes a court looking at an issue of where a person is counted as opposed to who is counted? Which Supreme Court case would you rely on? Burns, Burns would be one case, your honor, where the Supreme Court specifically said on this exact question that the question of where, of how to count individuals like prisoners and other temporary population groups is the legislature's to make. And the courts do not have constitution. I don't think Burns said. In fact, Mahan was a case that was this exact type of issue, where military personnel would be counted in Virginia, right? Mahan was a, it was an entirely distinguishable case, your honor. In Mahan, the courts. We'll talk about whether it's distinguishable or not, but that was a case about where one person, one vote, where a person was counted in the Supreme, and it was heard, right? In that case, it was heard because there was. It was successful. On, on, in the unique circumstances that the court identified in that case, it specifically said it's unique circumstances where the state in that case had not even counted them where they lived and slept. In that case, the military people who were being counted in the district where their ship was birthed, there was no dispute that those individuals lived and slept in a different district. Why can't they argue under that line of cases? I understand, you know, it's narrow, but the question is not whether it's narrow, whether it's foreclosed, and why can't they say that this is a unique situation too, where Connecticut under section 914 has said, you're, you're not able to vote as an incarcerated person in this district, but yet we're going to count you in that district, even though to the extent you have a right to vote, you have to vote in your place of pre-incarceration. So why don't they have an argument that that type of dichotomy, we're going to count you here, but to the extent you have a right to vote, you're not a resident of where we're counting you, you're a resident of your pre-incarceration district, why can't they argue that this is rather unique? Because Evanwell made clear, Your Honors, that a one person, one vote is not about voting. It is about representational equality, not voting equality. That's what Evanwell was all about. And that would be akin to saying, if that was the rule that you can't, you can't count people in districts where they don't vote, then that would be imposing a voter registration or voter eligibility population base, which Evanwell specifically said is not constitutionally required. And I think that's confirmed by the fact that there are lots of groups, lots of groups that are, that live in one district and are counted there for purposes of redistricting, but vote in another. Military personnel are one, and that's what Mahan recognized. There were people who lived, if you look at the footnote, one of the footnotes in Mahan, there were 8,000 sailors who lived and slept on the boats they were assigned to, and they were counted in the district where their, where their ship was birthed, even though their families may have been in an entirely different district. So military people, my understanding is that when you join the military, for entitled to maintain your voting residence where you're originally from. Which group are you saying under Connecticut law, let's just say Connecticut law, where you precluded from being considered a resident of that district, that you're still counted there? Who was in that category besides prisoners? Again, state law doesn't, only speaks about where you're a resident for voting. And one person, one vote is not about voting. It's about representational equality. You're being, for representational purposes, you're being counted in a district that you are not considered a resident under Connecticut law. For purposes of voting. But one person, one vote is not about voting. It's a misnomer that the Supreme Court resolved. And all the time, military absentees filed in every election, Livingston County alone, where I live, there are over 400 of them, but those people are scattered all across the United States. And from, from a, from a census standpoint are counted elsewhere. Exactly. And make up legislative districts in Utah, other places like that. That's exactly the point you're on there. And the military people are not the only example. College students. They are counted where they go to school or for purposes of the census, but they're entitled to vote where they're from. And I think the examples could go much farther. I mean, if you are a resident of somewhere, say Hartford, and I get transferred temporarily for a work assignment for. The problem is, the question that you haven't been able to answer yet, my colleagues given you is, is why isn't, why isn't the low bar with regard to plausibility? Why isn't that met here? I mean, really the Trump, this is the troubling aspect of this case is, is that this, your, your argument seems more like a merits argument to me than it does. Uh, the initial argument as to whether there's some kind of facial implausibility to the, uh, to the complaint. I think that there's a couple. Rucho, uh, makes clear that plaintiffs claim, which is based on their proposed fair and effective representation standard is non-justiciable. That is not subject to the, uh, 11th amendment. Political gerrymandering case. It's not a one person, one vote case. How could a case that's about political gerrymandering foreclose a one person, one vote case? Because of the reasons that the Supreme Court said in Rucho, why that claim was not justiciable, non-justiciable. The Supreme Court specifically said, partisan gerrymandering claims are non-justiciable because they require these political judgments about the nature of representation. And it specifically distinguished one person, one vote claims and says those are justiciable precisely because they do not require those inquiries. And if they did, their claims would be non-justiciable. And those all relate to dividing up counties and separating unified interests by splitting political, uh, dividing political subdivisions that come from larger subdivisions. They come out of the old cases where that originally started out of the groups of cases where, where states allowed one elected representative in the state legislature from each county. And there were, they were divided, diverse political back, or, uh, population groups there. And so then they start drawing the lines and they get into all those problems. But this is about just counting. But you're right. But, but the point that Rucho makes is that the reason you can't do that in Rucho for partisan gerrymandering claims is because there are no judicial, judicially manageable standards to determine what fair representation means. That's in the eye of the beholder. Is in this case, arguably, at least arguably different because there, there is an allegation of an impact based on race. Well, one person, one vote claims are equal protection claims, Your Honor. And the law is very clear that impact alone is not enough. You have to have discriminatory intent. And that's what the... That's not, that's not correct. Under gerrymandering cases, you need intentional discrimination, but one person, one vote, Burns, which you cited earlier, Burns says this, that this can be shown that designedly or otherwise, uh, affects, minimizes or, or cancels out the voting strength of an L of the racial element. So this designedly or otherwise on the one person, one vote, you can have a racial impact that's reviewable, even if it's not intentional. One person, one vote claims are not racial claims, Your Honor. But the, the 10%, the 10%, which is the one person, one vote standard is... That's what I'm talking about, under the 10% standard, even below 10%, you could still argue a racial impact, can't you? They have to, if you are below the 10%, the burden is on them to allege other facts to show a discriminatory intent, Your Honor. In paragraph six and paragraph 11, they do, this is not the focus of their claim, but they do clearly articulate that they believe that this, uh, this requirement, this rule is having a disproportionate racial impact, don't they? But if you're below the 10%, Your Honor, the 10% is a, is a standard that the Supreme Court has come up with to, to create a prima facie case of discriminatory intent for purposes of equal protection. This puts the burden to show on the state to show that there was no discriminatory intent. And if you're below that, then they have to allege other facts. And this is the Harris case that we cited in our brief and lots of other cases. The burden is on them not to show a disparate impact, it's to show discriminatory intent. And if you can't do that... Did you just hear the quote that I read from Burns? Did you just hear that quote? I mean, it says, designedly or otherwise, I don't, I don't know what you're relying on. The otherwise, I believe, Your Honor, is the 10%. That's what one person, one vote cases are talking about, is that, is that's the 10%, then the burden is on the plaintiffs to allege other facts. That's how the courts have developed the standard. It's not just Burns on that issue. It's, it's all the cases. Other facts beyond intent. Other facts beyond intent, right? Other than intent. Not, I don't believe that's correct, Your Honor. If it's below 10%, then I don't believe it's enough to show the discriminatory impact because that's not what equal protection claims, that's not how the equal protection clause works. All right. You, you have some time for, we'll hear from the other side. Good morning, and may it please the court, Alice Shacker on behalf of plaintiffs at police and WCP et al., including plaintiffs Gary and Conley Monk and Justin Farmer, who are here today, and who are residents of overpopulated districts in Connecticut who are harmed by the state's practice. I'll address this court's jurisdiction. You can be seated in the back. It's all right. Thank you. Thank you. I'll address this court's jurisdiction and the applicability of Ex parte Young. My colleague will then address the justiciability of plaintiff's claims. Your Honors, there's only one narrow question before this court today, 11th amendment immunity, and on that, the Ex parte Young exception clearly applies because plaintiff's claims are not foreclosed and they easily meet and surpass the low frivolousness bar. Although the Supreme court has repeatedly held in Verizon, for example, that the plaintiff's claims do not include an analysis of the merits, defendant's only hope on this appeal is to rely on the thin carve out in Ex parte Young for clearly frivolous claims. But determining frivolousness or insubstantiality is not the rigorous inquiry defendants wish it to be. That's why the Supreme court in a multitude of cases, most recently, just a few years ago in Shapiro v. McManus, emphasized that for the purposes of invoking federal jurisdiction, the Justice Scalia in Shapiro writes that constitutional and substantiality has been equated to terms such as obviously frivolous, wholly insubstantial, and essentially fictitious. This court in Calson suggests that this standard is rarely met. Indeed, this court in deposit insurance holds that in the context of Ex parte Young appellate review is quote necessarily deferential. And for good reason, Your Honors, this appeal is a disruption of the orderly adjudication and of the district court's management. That is why the Supreme court in Verizon has stated that claims should be allowed under Ex parte Young, even if they are probably quote not inconsistent with federal law after all. Well, what more is there to do? I mean, what, what more does the court need to know? Well, presumably it'd be three judges, not one. What more does the judge need to know or the judges need to know to decide whether this, this complaint states a claim? The judge in this case has already decided that this complaint states a claim. The standard here is only that it is, passes the low frivolousness. Well, what if the, what if the argument is, is that as a matter of law, the State's entitled to use population and notwithstanding the fact that Connecticut may, may define where someone lives for a different purpose, that doesn't, that doesn't, I mean, I realize that it caused the district court judge to make a determination in your favor, but that that doesn't, that doesn't alter the analysis under Evenwell and other cases in which reliance on census population has been approved for a long period of time and that, and that your idea of effective representation draws the court into two ambiguous and uncertain seas that are cautioned against in other areas, such as gerrymandering and that we should avoid. Not quite your Honor. The cases that defendants rely on, such as Evenwell, Chen, Daley, Cranston, they all, they all consider the question of whether States can count certain non-voter populations, such as incarcerated people or non-voters in the total apportionment base. Plaintiffs make no such claim. Slow down a little bit. Don't worry. Judge, I'll beg Judge Chen to give you more time. I realize that you're worried about time and I understand that, but slow down a little bit because it's very hard to understand you when you're talking that fast. Okay. Of course, Your Honor. Plaintiffs make no such claim that certain classes of non-voters, such as incarcerated people should not be counted in the total portion base. There is no dispute. Plaintiffs' claim only goes to where incarcerated people should be counted. This is consistent with Supreme Court precedent. As Judge Bianco mentioned earlier. But your, your reasoning, your reasoning is, is that they should be, they should be counted from the resident, from where they came, is because otherwise you deny them effective representation. And my suggestion to you is, is that argument makes me nervous about the fact that how judges define effective representation begins to put us into legislating matters as opposed to figuring out whether one person, one vote is being violated. This practice does not just affect the representation of incarcerated people, but rather it subverts equal representation for all Connecticut residents, residents such as plaintiffs who are here today or residents of suburban districts that have. There may be reasons to count someone from whence they came, but there may also be reasons to count someone from whence, where they are. They drink, they drink the water. They use the sanitary sewers of the communities in which they're housed. They have the benefit of the fire protection from the communities in which they're housed. Some communities may be required to extend water services to them at great cost to local taxpayers. Why isn't their presence, their presence, their relative, just like college students or people who are residents of, uh, of adult daycare centers? Why aren't there, why isn't their presence a rational reason to count them where they are? And isn't, I mean, what more do we need to know to resolve this case? First, your honor, incarcerated people are unique population because they are forcibly removed from their homes and placed in as our, as our people in adult daycare centers. They didn't ask to go there or people who are developmentally disabled. Craig developmental center housed 5,600 people at the height of it. And it was in my assembly district. They were counted where they resided. In addition, not only are incarcerated people unique population, but these are all factual questions that go to the merits that the district court should decide in the first instance. Because your premise is, is that they're entitled to be effective representation. My question to you, isn't that a question of law, a threshold question of law that could be decided quickly? This is a equal representation claim. It is a Reynolds claim. The Supreme Court in May and V Howell has recognized that in certain instances there is. Your contention is that it's an inequal representation claim because they're being denied, they're not being granted effective representation, correct? It is an unequal representation claim because Connecticut residents in districts outside of the prison districts are denied equal representation. The question is, these are legal questions. Right. That one should be able to decide now and why should we wait? I think, I think that's the gist of the question. These are merits questions that have not even been briefed yet, as the briefing to this court has been within the narrow scope of the ex parte young question. And that's the point with the three judge court, right? Yes, Your Honor. Fair enough. The, the, um, you did say a moment ago that the district court denied the motion to dismiss for failure to state a claim. Did the district court have jurisdiction to do that? Yes. The district court had jurisdiction. See, for example, Calson v. Peterson. Denied the motion to dismiss for failure to state a claim, or should that be a question decided by a three judge panel? The district court under 28 USC 2284 B3 has the authority to decide and conduct all proceedings except for the trial or render a final judgment on the merits. And that's exactly what it would do if it dismissed the claim for failure to claim under 12 B6, wouldn't it? This court. That's a decision. That's clearly a decision on the merits. If it were to dismiss the claim? Sure. If, if, if, if they had granted your, your motion, their motion to dismiss on immunity grounds and or for failure to state a claim, you'd be here. Would your, wouldn't your argument be is that they should have made it to a three judge panel? There's ambiguity there first in this. I would have thought that you, I, that's what I don't understand what happened here. I, I can't figure out why you're here. Uh, frankly, I don't understand why you didn't say to the judge when you're confronted with this motion, you're on it because now you're telling us that it's a three judge panel matter or that, that, that they can't do it on the merits without a three judge panel, but why didn't you tell the district court judge that, not you personally? Your Honor, this is an 11th amendment issue matter that is here today. If the low bar is simply that plaintiffs have stated a substantial and non-frivolous claim. The 11th amendment masquerade, it's masquerading as 11th amendment, but I suggest you it might be more than that, but in any event. In any event, you're out of time. Thank you. We'll hear from your colleague. Thank you. Well argued, Ms. Chalk. Alex Taubes for plaintiffs. I'll be speaking about the justiciability of plaintiff's claims. As has been discussed, plaintiffs bring an equal representation, one person, one vote on a claim. Rucho, which defendants entirely hinge their justiciability argument on, has no impact on such claims. The Court said so itself. But not only was Rucho about a different topic, but it came in a very different posture than this case. It was on direct appeal from three judge courts, two which had issued judgments after two trials, and the Supreme Court had the benefit of Gaffney, Bandmer, Vieth, Lulak, Gill against Whitford, many partisan gerrymandering cases, political gerrymandering cases, to its benefit, before it reached the ultimate conclusion that those cases did not provide judicially manageable standards. There's no support in that case to say that one-person, one-vote cases like these provide no judicially manageable standards. And in fact, on prior occasions, the Supreme Court has said that there's a right place to count people, and there's a wrong place to count people. That was Mann against Howell. And it was similarly a justiciable question. But it certainly told us that one way to count them is by using the census figures, hasn't it? Plaintiffs don't reaffirm, hasn't regularly reaffirmed that that's a pretty good standard to use, and why should we deviate from that? The Supreme Court has repeatedly said that the best data should be used. That's often the census data. In this case, first, plaintiffs don't challenge using census data. And in fact, in our brief in page 30, note 10, we note that the census actually provides both data for this particular question. And we don't challenge the baseline. We agree that the total population standard, which was held in Evanwell to be a permissible standard, should be used in this case. We simply disagree with counting people in the wrong place, and not just counting them in the wrong place. But counting them in the wrong place resulting in the 10 percent deviation. Well, I know you say it's all about where. I understand that. But your reason for where, I have a problem with, and it sounds injusticiability. It's this effective representation idea. A fellow who's in the United States Air Force, who's on an Air Force base in Alaska, has no more connection to the town of Livonia than if someone who's in Groveland Correctional does to the town of Groveland in upstate New York. But both are counted where they're found. And one votes in the town of Livonia, and the other one doesn't vote at all. So I don't, what are the elements of effective representation? Well, a couple of responses to that question. So first of all, the question of the actual ties between the individuals is a factual one. But to go to the heart of your question, fair and effective representation doesn't come from plaintiffs. It comes from Evanwell itself, which at 136 Supreme Court Reporter 1132, in rejecting voter equality, as the defense points out, pointed to the important stakes of those residents in deciding that they should be counted. Where they're found guarantees effective representation because where they're found has some interest. Now I recognize, look, I understand that folks who are incarcerated are separated from the society or the communities in which they're placed, okay? But they're equally separated from the communities where Connecticut says they reside. And I don't know, so I don't know how one argues more favorably for consideration than the other, or somehow represents indices of racial animus. Well, the injury here is not to the prisoners. The injury here is to the communities where the prisoners were taken, because they're entitled to undiluted, equal representational weight. And in Connecticut, in particular, if you look at JA-22, it's the map of where the much more than in New York State or that ever were in Livingston County. They're concentrated in these particular districts. Have you ever been to the three that are located right next to each other? I can confirm that there was some research done into Allegheny, Ontario, and Livingston County, and whether they had a prison during the 1970s and 80s prior to the beginning of this case, Your Honor. And Connecticut is different. First of all, the State House districts are much smaller than New York. We have the same number of representatives. We only have 3 million people. So the ideal district has 23,000 residents. And in our case, we allege that one of those districts has 3,000 people who, under State law, are absent from the districts where our plaintiffs are from. And so those districts where the plaintiffs are from are districts that are being harmed. Judge Edginton found that this was far from a frivolous claim, that, in fact, the defendant's appeal on Eleventh Amendment grounds was frivolous, and for all of those reasons, this Court should affirm Judge Edginton's order and send this case back to the district court. Thank you. Thank you. We'll hear the rebuttal. I'd just like to make a couple of points, Your Honors. First, with regard to Judge Wesley's point, there is nothing left to do in this case on remand. We have accepted their factual allegations as true. It's a pure question of law that this Court can and should decide conclusively.  I'm not the only one who's saying this. Three circuit courts have interpreted Burns the way that I'm asking this Court to interpret it here, in Cranston, Chen, and Daly. All three of those circuit courts specifically said that, under Burns, the question of how you count the choice of population basis for the legislature to make, and the courts do not have constitutional authority to interfere with that judgment unless the population base is facially neutral or facially discriminatory, or unless the 10 percent is violated based on that population base. That's three circuit courts that have said that. To me, that's a secondary issue. The Mahan case, to me, is the primary issue. And whether or not the record is complete or not, this shouldn't be a 12B6 exercise at this point. This could go back to a three-judge panel who would then have to decide, as a matter of law, whether this should proceed or not. This is even narrower than that, whether or not there's some Supreme Court case that forecloses this. And Mahan is still good law. It's unique. It's a narrow case. There were unique facts. But why shouldn't they be able to try to argue that this is a plausible claim that should be able to proceed as Mahan? Mahan did not say anything about Burns or about second-guessing or overturning this principle that courts don't get to interfere, absent a showing of discrimination or the 10 percent violation. What Mahan said, and I would concede to you, the Court, that blind reliance on the census counts people where they don't live and sleep. That's not this case. Prisoners live and sleep where they are counted. And that is what one-person, one-vote is about. And Mahan doesn't say anything contrary to that. And every other decision, that's what the Court is looking at. It's a matter of math. Roberts. So if New York counted anybody who visited New York City at any time for one hour during the course of a year in New York City, regardless of where they lived, you're saying that would be nonreviewable? I'm sorry? If people were counted in New York City, if they just visited New York City for one hour, you're saying that's unreviewable? No, Your Honor. They're not counted there. They're counted where they live and sleep on a regular basis. So you're suggesting that all these residency issues, no matter how, you know, even if they're completely irrational, not based upon where a person really resides, would not be reviewable, as long as they spend some time there. I thought that's what you're suggesting. I'm saying that the Supreme Court has said that reliance on the census is presumptively permissible unless you establish that the population disparities exceed 10 percent or that it was motivated in that particular context by a discriminatory intent. And we don't have that here. And that's how Cranston, Chen, and Daley have interpreted Burns. That's — there's no case where the Court has ever gone into the types of questions that the plaintiffs ask the Court to do here. This would be remarkable. And for all the reasons that we've just discussed about Brucho and justiciability, these are not questions that the courts are competent to decide, to decide what it means for somebody to receive fair and effective representation. Thank you. We have your argument. Thank you, Your Honors. We'll reserve decision.